UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PATRICE BOOTHE, as next friend of K.C., a minor, | ) | |
| | ) | |
| Plaintiff, | ) | 13 C 7228 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| ADAM SHERMAN, VILLAGE OF WHEELING, TOWNSHIP HIGH SCHOOL DISTRICT 214, and UNKNOWN DISTRICT 214 EMPLOYEES, | ) ) ) ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER

Patrice Boothe, the mother of K.C., a student at Wheeling High School, filed this suit against the Village of Wheeling, Wheeling police officer Adam Sherman, Township High School District 214 (which encompasses the high school), and unnamed District employees, alleging that they violated and conspired to violate K.C.'s federal and state civil rights, destroyed evidence favorable to her, and committed other torts. Doc. 1. On behalf of itself and its unnamed employees, the District has moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss portions (Counts III, IV, V, and VIII) of the complaint, Doc. 22, and Sherman and the Village have done the same, Doc. 25. The motions are granted in part and denied in part.

### Background

In considering the motions to dismiss, the court assumes the truth of the complaint's factual allegations, though not its legal conclusions. *See Munson v. Gaetz*, 673 F.3d 630, 632 (7th Cir. 2012). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Boothe's brief opposing dismissal, so

1

long as those facts "are consistent with the pleadings." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). The facts are set forth as favorably to Boothe as permitted by these materials. *See Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012).

On October 11, 2012, Sherman, the on-duty police officer at Wheeling High School, grabbed K.C.'s arms and pulled her out of the school cafeteria and into a hallway. Doc. 1 at ¶¶ 10, 11. (Sherman explains in his brief that he was breaking up a fight, Doc. 25 at 1, but that explanation cannot be considered on a Rule 12(b)(6) motion.) Despite K.C.'s cooperation, Sherman intentionally tripped K.C., causing her to fall on her face; he then knelt on her back and handcuffed her. Doc. 1 at ¶¶ 12-16. As a result, K.C. suffered injuries to her back and ribs. *Id.* at ¶¶ 17-19. Sherman took K.C. to the Wheeling police station and detained her there for several hours. *Id.* at ¶ 20. K.C. was charged with disorderly conduct, mob action, and resisting arrest. *Id.* at ¶ 21. Her criminal case remains pending in state court, with a trial set for November 18, 2014. *Id.* at ¶ 30; Doc. 38 at ¶ 3.

The day after K.C.'s arrest, Boothe, Sherman, and others gathered at the school to watch footage from two surveillance videos; later that day, Boothe submitted a request under the Freedom of Information Act (it is unclear whether she means the federal act, 5 U.S.C. § 552, or the state act, 5 ILCS 140/1 *et seq.*) with the District to preserve the videos and to provide her with copies. Doc. 1 at ¶¶ 22-24. Although the District initially refused to produce the videos because they contained footage of other minors, it ultimately provided them to K.C.'s criminal defense attorney on the order of the judge in the state criminal case. *Id.* at ¶¶ 25-26. A Wheeling police department report suggested that four surveillance videos had been made, but only two were produced to K.C.'s lawyer. *Id.* at ¶ 27. The other two "may have contained exculpatory

evidence for K.C." and, according to Boothe, "portions of the video footage [that was produced to K.C.] were altered and/or destroyed." *Id.* at ¶¶ 28-29.

The first four counts of Boothe's twelve-count complaint allege violations of K.C.'s federal constitutional rights and are brought under 42 U.S.C. § 1983. Doc. 1 at ¶¶ 31-56; Doc. 28 at 4. Boothe alleges that Sherman used excessive force against (Count I) and unlawfully seized (Count II) K.C. in violation of the Fourth Amendment; that all Defendants, including the unnamed District employees, destroyed exculpatory evidence and provided false testimony (Count III) in violation of the Fourteenth Amendment's Due Process Clause and *Brady v. Maryland*, 373 U.S. 83 (1963); and that Defendants conspired to violate K.C.'s federal civil rights (Count IV). The remaining counts arise under Illinois law. Doc. 1 at ¶¶ 57-101; Doc. 28 at 4. Boothe alleges that Defendants civilly conspired to maliciously prosecute K.C. (Count V); that Sherman, the Village, and the District are liable for Sherman's assault (Count VI) and battery (Count VII) of K.C., as well as for malicious prosecution (Count VIII) and abuse of process (IX) relating to the criminal proceedings against K.C.; that the District is liable for negligent spoliation of the missing or altered surveillance videos (Count X); and that the Village and the District are liable for Sherman's and the unknown District employees' state law torts under theories of indemnity, 745 ILCS 10/9-102 (Count XI), and respondeat superior (Count XII). The court has federal question jurisdiction over the first four claims, *see* 28 U.S.C. §§ 1331, 1343(a), and supplemental jurisdiction over the state law claims, *see* 28 U.S.C. § 1367(a).

## Discussion

The District has moved to dismiss Counts III (*Brady* claim), IV (federal conspiracy), V (state law civil conspiracy), and VIII (malicious prosecution). Doc. 22. Sherman and the

3

Village have moved to dismiss Count III against the Village only, and Counts IV, V, and VIII in their entirety. Doc. 25. In response, Boothe agrees to dismiss Count VIII (malicious prosecution) without prejudice, pending the outcome of K.C.'s criminal case. Doc. 28 at 9. Boothe also agrees that the District is not a proper defendant on Counts III and IV. *Id*. at 6. Remaining in dispute are the following issues: (1) whether the unknown District employees and the Village should be dismissed as defendants on Count III; (2) whether Count IV states a claim for relief against Sherman, the Village, and the unknown District employees; and (3) whether Count V states a claim for relief against any defendant.

Before reaching the merits of Defendants' arguments, the court must first consider whether it should abstain under the rule of *Younger v. Harris*, 401 U.S. 37 (1971), from exercising jurisdiction over Counts III and IV. *See Hicks v. Miranda*, 422 U.S. 332, 348 (1975) ("The District Court committed error in reaching the merits of this case despite the appellants' insistence that it be dismissed under *Younger*[.]"). Although no party has formally moved for *Younger* abstention, the court may raise the issue *sua sponte*. *See Capra v. Cook Cnty. Bd. of Review*, 733 F.3d 705, 713 n.5 (7th Cir. 2013); *Barichello v. McDonald*, 98 F.3d 948, 955 (7th Cir. 1996). *Younger* abstention requires federal courts to "abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." *FreeEats.com, Inc. v. Indiana*, 502 F.3d 590, 595 (7th Cir. 2007); *see also Forty One News, Inc. v. Cnty. of Lake*, 491 F.3d 662, 665 (7th Cir. 2007). Although "only exceptional circumstances justify a federal court's refusal to decide a case in deference to the States," *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989), state criminal proceedings indisputably qualify as "exceptional circumstances" warranting *Younger* abstention, *see Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 591 (2013). The *Younger* doctrine

4

traditionally involves claims for injunctive relief, but the Seventh Circuit has long held that it applies even where, as here, the plaintiff seeks only monetary damages. *See Gakuba v. O'Brien*, 711 F.3d 751, 753 (7th Cir. 2013); *Simpson v. Rowan*, 73 F.3d 134, 137-39 (7th Cir. 1995). That said, a court should not abstain under *Younger* where "(1) the state proceeding is motivated by a desire to harass or is conducted in bad faith; (2) there is an extraordinarily pressing need for immediate equitable relief; or (3) the challenged provision is flagrantly and patently violative of express constitutional prohibitions." *Jacobson v. Vill. of Northbrook Mun. Corp.*, 824 F.2d 567, 569-70 (7th Cir. 1987) (citations and internal quotation marks omitted).

Count I of the complaint alleges that Sherman violated the Fourth Amendment by using excessive force when arresting K.C. But K.C. is charged in the criminal case with resisting arrest, and whether the plaintiff resisted arrest is one of the factors to be considered in an excessive force claim. *See Graham v. Connor*, 490 U.S. 386, 396 (1989) (holding that on an excessive force claim, the Fourth Amendment's "proper application requires careful attention to the facts and circumstances of each particular case, including … whether [the suspect] is actively resisting arrest or attempting to evade arrest"); *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 724 (7th Cir. 2013) (same). Because the question whether K.C. is guilty of resisting arrest is intertwined with the question whether Sherman used excessive force, *Younger* abstention is appropriate on Count I.

Abstention is also warranted on Count II, which alleges that K.C. was unlawfully seized in violation of the Fourth Amendment. K.C. was charged in the criminal case not only with resisting arrest, but also with mob action and disorderly conduct, and K.C.'s arrest was lawful so long as there was probable cause to arrest her for committing just one of the three crimes. *See Sroga v. Weiglen*, 649 F.3d 604, 608 (7th Cir. 2011) ("The existence of probable cause to arrest a

suspect for any offense, even one that was not identified by the officers on the scene or in the charging documents, will defeat a Fourth Amendment false-arrest claim."); *Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 682 (7th Cir. 2007) (same). Whether Sherman had probable cause to arrest K.C. for mob action or disorderly conduct depends on issues that will necessarily overlap with those the state must prove on those two counts. For example, K.C. is guilty of "mob action" if she engaged in "the knowing assembly of 2 or more persons with the intent to commit or facilitate the commission of a felony or misdemeanor." 720 ILCS 5/25-1(a)(2). A jury's deciding that K.C. actually committed mob action is potentially relevant to whether Sherman had probable cause to arrest her for it. The same is true of the disorderly conduct charge. *See* 720 ILCS 5/26-1(a) ("A person commits disorderly conduct when he or she knowingly: (1) Does any act in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace."). Because both of these criminal charges involve K.C.'s immediate pre-arrest activities, Boothe's unlawful arrest claim "involve[s] or call[s] into question" those charges, thus requiring *Younger* abstention. *FreeEats.com*, 502 F.3d at 595.

Abstention is warranted on Counts III and IV as well. Count III alleges that Defendants "testified falsely" and "destroyed or altered the video tape of the incident" that gave rise to the criminal charges, Doc. 1 at ¶¶ 45-46, and Count IV alleges a conspiracy to do the same, *id.* at ¶¶ 52-53, in violation of due process. Both counts are therefore constitutional claims intimately related to the criminal case, as Defendants having suppressed exculpatory evidence or fabricated inculpatory evidence would be grounds for precluding or vacating a conviction. *See*, *e.g.*, *United States v. Agurs*, 427 U.S. 97, 103 (1976) ("[T]he Court has consistently held that a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside

6

if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury."); *Whitlock v. Brueggemann*, 682 F.3d 567, 588 (7th Cir. 2012) (same).

Nothing in the complaint suggests or hints that any of the exceptions to *Younger* abstention applies, and nothing suggests that K.C. will not have "a fair and sufficient opportunity for vindication of federal constitutional rights" in her state criminal case. *Kugler v. Helfant*, 421 U.S. 117, 124 (1975). In fact, K.C. *did* file a motion to dismiss the criminal case on those grounds, and, in a ruling issued last week, the state court declined to dismiss the charges but held "that there will be a negative inference … that the videotape was altered." Doc. 38 at ¶ 3. Accordingly, the court abstains from considering Counts I-IV. *See Palmer v. City of Chicago*, 755 F.2d 560, 575 (7th Cir. 1985) (remanding with instructions to abstain under *Younger* because "the criminal defendant is free to claim constitutional violations under *Brady* … and contest these alleged violations in the Illinois state court"). Still, because Boothe seeks only monetary damages and not an injunction, "[b]ecause monetary relief is not available to [the plaintiff] in [her] defense of criminal charges," and "because [her] claims may become time-barred by the time the state prosecution has concluded," the court will "stay[] rather than dismiss[]" Counts III and IV. *Gakuba*, 711 F.3d at 753; *see also Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 719 (1996) ("[W]e have applied abstention principles to actions 'at law' only to permit a federal court to enter a stay order that *postpones* adjudication of the dispute, not to dismiss the federal suit altogether."); *Simpson*, 73 F.3d at 138-39.

Given that Counts III and IV are not dismissed under *Younger*, the court will consider whether they should be dismissed for any of the other reasons pressed by Defendants. The District asks that its unknown employees be dismissed from all counts on the grounds that the complaint "fails to allege any facts concerning actions on the part of the" unknown employees

7

and "fails to even mention any of these Defendants in any of the charging paragraphs." Doc. 22 at 8. Not so. The complaint plainly alleges that "unknown officers or agents of the [District] violated Plaintiff's right to due process" by "destroy[ing] or alter[ing] the video tape of the incident," Doc. 1 at ¶¶ 43, 46 (Count III), and that "Sherman and unknown Township School District employees[] expressly or impliedly formed an agreement to suppress evidence by destroying and/or altering video surveillance footage of the incident at issue," *id.* at ¶¶ 51, 58 (Counts IV and V). If the surveillance videos were indeed altered or destroyed, it is plausible that the likely culprits include District employees.

To the extent the District relies on Boothe's failure to name the specific employees she is suing, that argument, too, is without merit. "The mere inability to state the individual defendants by name … does not warrant dismissal of a claim if the allegations in the complaint allow for the specific persons to be subsequently identified with reasonable certainty." *Smith-Bey v. Hosp. Adm'r*, 841 F.2d 751, 759 (7th Cir. 1988). Indeed, it is common for civil rights plaintiffs not to know the identities of the proper defendants in a suit's early stages, *see*, *e.g.*, *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971); presumably their identities will become known through discovery. Boothe's allegations of destroying or altering the surveillance tapes are specific enough to put the District on notice of who might be responsible and how to identify them with "reasonable certainty."

The Village moves to dismiss itself as a defendant on all of Boothe's federal claims on the ground that she has not alleged federal municipal liability under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). Doc. 25 at 4. Boothe, albeit without identifying any specific counts, agrees that she "has not alleged any Section 1983 claims against the Village." Doc. 28 at 10. The Village is therefore dismissed as a defendant on Count III

(*Brady* claim). Boothe insists, however, that the Village is still liable on Count IV (federal conspiracy). *Id*. at 9. But this count, which according to Boothe herself is being brought under § 1983, Doc. 28 at 9 n.2, cannot be maintained against the Village, a municipality, unless pursuant to *Monell*. *See Monell*, 436 U.S. at 694 ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."); *Burks v. Raemisch*, 555 F.3d 592, 593-94 (7th Cir. 2009). Boothe has therefore failed to state a viable claim against the Village on Count IV as well.

Defendants move to dismiss Count IV for the additional reason that a conspiracy claim under § 1983 may be asserted only against *non*-state actors; all Defendants here are state actors. Doc. 25 at 5-6. According to the Village, state actors can *never* be liable for conspiracy under § 1983. Nothing in the statute's text compels such a conclusion, but Defendants cite several Seventh Circuit cases that, they claim, stand for that proposition, including *Logan v. Wilkins*, 644 F.3d 577, 583 (7th Cir. 2011); *Brokaw v. Mercer Cnty.*, 235 F.3d 1010, 1016 (7th Cir. 2003); and *Goldschmidt v. Patchett*, 686 F.2d 582, 585 (7th Cir. 1982). Defendants have likely overstated the holdings of these cases. Illustrative is *Logan*:

> Logan argues that "the act complained of which caused him an injury … is a conspiracy among the governmental Defendants." But the "conspiracy matters only" with respect to defendant Barber, a private actor, because the other defendants "are state actors, and thus amenable to suit under 42 U.S.C. § 1983, by virtue of their offices."

*Logan*, 644 F.3d at 583 n.1 (brackets omitted) (quoting *Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003)). In other words, the conspiracy allegations in *Logan* were unnecessary as to the state actors because they were already "amenable to suit under" § 1983. But saying that a § 1983 conspiracy charge is *unnecessary* or *duplicative* is not the same as saying that it is *prohibited*.

9

And in fact many Seventh Circuit decisions have taken for granted that a § 1983 conspiracy claim is viable even where all defendants are state actors. *See*, *e.g.*, *Lewis v. Washington*, 300 F.3d 829, 835 (7th Cir. 2002) (reversing the district court's dismissal of a § 1983 conspiracy claim against only state actor defendants); *Ryan v. Mary Immaculate Queen Ctr.*, 188 F.3d 857, 860 (7th Cir. 1999) (implicitly assuming the availability of a § 1983 conspiracy claim against only state actor defendants); *Jones v. City of Chicago*, 856 F.2d 985, 992-93 (7th Cir. 1988) (affirming a jury verdict finding a § 1983 conspiracy among only state actors).

Defendants do raise an interesting point: if all of the alleged conspirators are state actors, the conspiracy claim in Count IV adds nothing to the underlying claim in Count III. That is because "conspiracy is not an independent basis of liability in § 1983 actions," *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008), and also because "an actual denial of a civil right is necessary before a cause of action [for conspiracy] arises," *Goldschmidt*, 686 F.2d at 585. Put differently, Defendants cannot be held liable under § 1983 for *conspiring* to violate K.C.'s due process rights unless they *actually* violated her due process rights; but if they actually violated her rights, then the conspiracy charge adds nothing to the case or to Boothe's potential recovery, as § 1983 plaintiffs may recover only once for each injury. *See Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 311-13 (7th Cir. 2010); 1 Sheldon H. Nahmod, *Civil Rights & Civil Liberties Litigation: The Law of Section 1983* § 4:15 (4th ed. supp. 2013-2014) ("The general bar against double recovery for the same injury is also applicable to § 1983 cases."). In fact, the allegations in Count III and Count IV are nearly identical. *Compare* Doc. 1 at ¶¶ 41-49 *with id.* at ¶¶ 50-56. Nevertheless, there is no rule preventing a plaintiff from alleging multiple legal theories as bases for recovering on a single injury, particularly at the pleading stage, and so the court will not dismiss the federal conspiracy claim on this ground at this time.

Defendants' only remaining argument regarding Count IV is that Boothe has failed to plausibly allege a conspiracy "[b]ased on the heightened pleading standard for conspiracy claims," Doc. 25 at 8, because she "has not pled with the specificity required as to time, location or scope" of the conspiracy, Doc. 22 at 6. But the Seventh Circuit has explicitly rejected the existence of a heightened pleading standard for conspiracy claims: "[I]t is enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with." *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002). And that remains the rule even after *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *See Cooney v. Rossiter*, 583 F.3d 967, 970-71 (7th Cir. 2009) (discussing *Twombly*/*Iqbal*'s requirement that a plaintiff "make plausible allegations" and approvingly citing *Walker* for the pleading standard in conspiracy cases); *see also Geinosky v. City of Chicago*, 675 F.3d 743, 749 (7th Cir. 2012) ("Under *Twombly,* all plaintiff needed to allege was a plausible account of a conspiracy."). In her complaint, Boothe identifies the parties to (Sherman and the District employees, Doc. 1 at ¶ 51), the general purpose of (to cover up the illegal arrest and excessive force, and to destroy evidence favorable to K.C., *id.* at ¶¶ 51, 54, 55), and the approximate date of (sometime between the October 2012 arrest and the January 2013 production of the videos to K.C.'s criminal defense lawyer, *id.* at ¶¶ 22-29, 51-54) the conspiracy, which gives Defendants sufficient notice of the contours of the conspiracy claim. Boothe is not required to plead conspiracy with any greater specificity to survive a motion to dismiss. *See Hoskins*, 320 F.3d at 764 (holding that the district court erred in ruling that "a claim of conspiracy must be pleaded with specificity") (brackets and quotation marks omitted).

Nor is the conspiracy claim implausible. In *Twombly*, the antitrust defendants' allegedly improper behavior was more likely attributable to conscious parallelism, which is not only sound "rational and competitive business strategy" but also perfectly legal. 550 U.S. at 553-54. By contrast, there is no legitimate reason for school officials to have intentionally altered or destroyed surveillance video footage of K.C.'s arrest, especially after Boothe had specifically asked them to preserve the videos and to provide her with copies. If school officials did alter or destroy the videos, it is plausible that they did so in implied or express agreement with Sherman, who stood to gain from the videos' destruction or alteration, assuming (as the court must at this stage) that the videos contained footage favorable to K.C. The court therefore declines to dismiss Count IV against Sherman and the unknown District employees.

A different result obtains for Count V, which alleges that all Defendants conspired in violation of state law to maliciously prosecute K.C. Doc. 1 at ¶¶ 57-62; Doc. 28 at 4. Under Illinois law, "[i]n order to state a claim for civil conspiracy, a plaintiff must allege an agreement *and* a tortious act committed in furtherance of that agreement." *McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 258 (Ill. 1999) (emphasis added); *see also Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 509 (7th Cir. 2007) (Illinois law). "While the agreement is a necessary and important element of a cause of action for civil conspiracy, it does not assume the same importance as in a criminal action. An agreement to commit a wrongful act is not a tort, even if it might be a crime. A cause of action for civil conspiracy exists only if one of the parties to the agreement commits some act in furtherance of the agreement, which is itself a tort." *Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888, 894 (Ill. 1994) (internal citations omitted); *see also Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 939 (7th Cir. 2012) (Illinois law). The overt acts alleged in Count V of the complaint are related to the malicious

prosecution claim—but Boothe has agreed to drop her malicious prosecution claim until the state criminal proceedings conclude, their favorable (to K.C.) termination being a required element of the tort. *See Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (Ill. 1996); *Bridewell v. Eberle*, 730 F.3d 672, 677 (7th Cir. 2013) (Illinois law). That concession renders untenable, at least for the time being, Boothe's claim that Defendants civilly conspired to commit malicious prosecution. *See Farwell v. Senior Servs. Assocs., Inc.*, 970 N.E.2d 49, 58 (Ill. App. 2012) ("[P]laintiff's civil conspiracy claims cannot stand where there are no underlying intentional torts that defendants could have conspired to perform.").

True, the complaint alleges that one of the improper acts was Sherman's arresting K.C. without probable cause, Doc. 1 at ¶ 59, which is indeed a tort. But that act could not have been in furtherance of the conspiracy, which according to Boothe was formed "in order to cover-up Officer Sherman's illegal arrest of Plaintiff and the excessive force used upon her." *Id.* at ¶ 58. It is implausible, at least on these facts, that Defendants agreed to cover up an arrest *before* it happened. Accordingly, the court dismisses the state law civil conspiracy claim against all Defendants, without prejudice to Boothe's refiling it (along with the malicious prosecution claim) upon termination of the state criminal proceedings against K.C.

## Conclusion

For the foregoing reasons, Defendants' motions to dismiss are granted in part and denied in part. Counts I and II stayed pursuant to the *Younger* doctrine. Counts III and IV are dismissed without prejudice as to the Village and the District, and otherwise are stayed pursuant to *Younger*. Plaintiffs may replead Counts III and IV as to the Village and the District once the stay is lifted. Counts V and VIII are dismissed without prejudice to repleading after the criminal

13

case against K.C. concludes. Defendants shall answer all surviving portions of the complaint, except for Counts I-IV, by September 24, 2014.

September 3, 2014

_____
United States District Judge